The State v. Minton.

---

THE STATE (THE MORRIS AND ESSEX RAILROAD COMPANY, PROSECUTORS,) v. MINTON, COLLECTOR OF CHATHAM.

The charter of the Morris and Essex Railroad Company provides, that as soon as the net proceeds of said railroad shall amount to seven per cent. upon its cost, the said corporation shall pay to this state a tax of one half of one per cent. on the cost of said road ; *provided,* that no other tax or impost shall be levied or assessed upon the said company. It was held—

1. That the exemption under the word *provided* was a positive enactment exempting the company from all other tax, and not a condition upon which the tax of one half of one per cent. was payable.

2. That the company was exempted from all other tax, as well before the tax of one half per cent. was payable as afterwards.

3. That this provision, although a power of alteration and repeal was reserved in the charter, was not affected by a subsequent general tax act declaring *all lands* liable to taxation, and repealing all acts and parts of acts inconsistent with its provisions. The provisions of a charter shall not be altered or repealed, except by express words.

---

This was on *certiorari*, directed to the collector of the township of Chatham, in the county of Morris, bringing up an assessment, made in 1851, upon the lands upon which the road of the prosecutors was constructed in said township. The only question was, whether these lands were exempt by the charter of the company.

Argued before the CHIEF JUSTICE, and POTTS and ELMER, Justices, by *Whelpley*, for prosecutors, and *Dalrymple* and *Schenck*, for defendants.

*Whelpley*, for prosecutors.

The 14th section of the charter expressly provides that company shall be liable to no other tax than the one reserved to the state. The question has been decided on a like provision in charter of the Paterson and Hudson River Railroad Com-

pany. *State* v. *Berry*, 1 *Zab.* 557. Public highways are not taxable. 4 *Metc.* 564, *Worcester* v. *Western Railroad.* The only difference in words of charter, is that here it is in the form of a proviso. It is a very common form for adding a new enactment to a section that has no reference to, and can be no condition of any thing contained in it. It is so here.

No provision of this charter can be repealed by expressions in a general law. It is repealable by the legislature, but nothing in it will be considered as intended to be repealed, except by express provision.

*Dalrymple* and *Schenck*, for township.

1. By tax act of 1851, all lands within the state are to be taxed, except those within certain exceptions specified in the act. These lands cannot be contended to be within any exception in the act; they are not shown to be represented by stock taxed in the hands of the stockholders. The words of the exemption are by such stock "as is taxed," not as " may be" taxed, and therefore no pretence of exemption until stock is actually taxed.

2. This company is not exempted from taxation by their charter, until they actually pay a tax to the state according to its provisions. In the cases referred to as decided, the tax reserved in the charters of these companies had been paid to the state.

3. The tax law of 1851 is a virtual repeal of this provision in this charter; it enacts generally and broadly that all acts and parts of acts inconsistent therewith be repealed. The legislature had reserved the right to alter or repeal this charter; and, therefore, when they pass a tax law inconsistent with its peculiar provisions, and repeal all parts of acts inconsistent with the last act, it repeals those provisions.

POTTS, J. The assessor of the township of Chatham assessed a tax on twenty-three acres of land belonging to the Morris and Essex Railroad Company, and on which they have constructed their road and depot in that township. The only question made is, whether the railroad and its necessary appendages are liable to taxation. The 15th section of the act incorporating this company enacts, among other things, that, "as

soon as the net proceeds of said railroad shall amount to seven per cent. upon its cost, the said corporation shall pay to the treasurer of this state a tax of one half of one per centum on the cost of said road, to be paid annually thereafter on the first Monday of January of each year; *provided that no other tax or impost shall be levied or assessed upon the said company."*

There can be no reasonable doubt, in my opinion, that the legislature intended, by this language, to exempt the company's property from taxation until the improvement it was chartered to accomplish should become remunerative, that is, until its income from the road should enable the stockholders to divide seven per cent. upon their outlay. The enterprise proposed was one of public importance. It was certain that the construction of the road would benefit the public, but it was not so certain that it would be profitable to the stockholders; and the legislature, therefore, held out to them the immunity of exemption from taxation as a consideration for the public benefit to be conferred, and an inducement to encounter the hazard ; and this immunity was to continue until the profits of the road should be such as to enable the company to pay a reasonable tax. The argument, that the effect of the clause, prefixed by the word "*provided*," is simply to relieve the company from the obligation to pay the prospective tax of one half of one per cent., *in case* any other tax or impost should be levied or assessed upon it, is unsound. If there was no exemption there was no contingency; there was a *certainty* that other taxes *would* be levied upon the property of the company, and therefore a stipulation for a prospective tax of one half of one per cent., *in case* such other taxes were *not* levied, would be an absurdity. Again, it is argued that the exemption clause, if it be such, was intended only to operate from the time when the company should commence paying the one half of one per cent. into the state treasury. But there is nothing in the phraseology used by the legislature which restricts its operation to the future ; the language is, "no other tax or impost shall be levied," &c. And in the third place it was insisted, that inasmuch as the legislature has reserved in the charter the right of amendment, alteration, or repeal, therefore this exemption is repealed by the supplement to the act concerning taxes, passed in 1851, which provides that

" all lands within this state, whether owned by individuals or corporations, shall be liable to taxation," and that " all acts and parts of acts inconsistent with the provisions of this act," are repealed. But the words " acts and parts of acts " in this supplement are not to be construed as embracing charters of private corporations, or as affecting privileges or immunities granted to such, even though they may be repealable. The reasonable inference always is, that when the legislature intend to take away these, they will do it in express terms, and *e converso*, when they do not do it in express terms, they do not intend to do it.

Upon the whole, I am of opinion, that the tax complained of is illegal, and must be set aside.

CITED in *State* v. *Bentley*, 3 *Zab.* 545; *State* v. *Mellick*, 1 *Dutch.* 564; *State Treas.* v. *Som. & Eas. R. R. Co.*, 4 *Dutch.* 25; *State* v. *Jersey City*, 5 *Dutch.* 174; *Mech. & Tr. Bk. of J. C.* v. *Bridges*, 1 *Vr.* 115; *State* v. *Miller*, 1 *Vr.* 370; *State* v. *Miller*, 2 *Vr.* 526; *State* v. *Jersey City*, 2 *Vr.* 577; *State* v. *Douglass*, 5 *Vr.* 87; *State* v. *Mills*, 5 *Vr.* 180; *McGavisk* v. *State*, 5 *Vr.* 513; *State* v. *Comm'rs of R. R. Taxation*, 8 *Vr.* 230; *State* v. *Com. of R. R. Tax.*, 9 *Vr.* 474; *Stonnington Sav. Bk.* v. *Davis*, 1 *McCar.* 290.